TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 93-519 |
| of | : | |
| | : | October 8, 1993 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| GREGORY L. GONOT | : | |
| Deputy Attorney General | : | |
| | : | |
| | : | |

THE HONORABLE ROSS JOHNSON, MEMBER OF THE CALIFORNIA ASSEMBLY, has requested an opinion on the following question:

Are federal correctional officers employed by the Bureau of Prisons and assigned to duties in California exempt from those provisions of the Dangerous Weapons Control Law which prohibit the carrying of concealed or loaded firearms?

CONCLUSION

Federal correctional officers employed by the Bureau of Prisons and assigned to duties in California are exempt from those provisions of the Dangerous Weapons Control Law which prohibit the carrying of concealed or loaded firearms.

ANALYSIS

The United States Bureau of Prisons operates under the direction of the United States Attorney General and has charge of such functions as the management and regulation of all federal penal and correctional institutions and the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States. (18 U.S.C. § 4042.) We are asked whether federal correctional officers employed by the Bureau of Prisons in California are exempt from California's laws which prohibit persons from carrying concealed or loaded firearms. We conclude that these federal officers are exempt.

With respect to the carrying of concealed weapons, Penal Code section 12025, subdivision (a)[1] provides:

_____

[1] All undesignated section references hereafter are to the Penal Code. Section 12025 is part of the Dangerous Weapons Control Law (§§ 12000-12101).

"A person is guilty of carrying a concealed firearm when he or she does any of the following:

"(1) Carries concealed within any vehicle which is under his or her control or direction any pistol, revolver, or other firearm capable of being concealed upon the person.

"(2) Carries upon his or her person any pistol, revolver, or other firearm capable of being concealed upon the person."

Section 12031, subdivision (a)(1) contains the following general proscription against the carrying of loaded firearms:

"Except as provided in subdivision (b), (c), or (d), every person who carries a loaded firearm on his or her person or in a vehicle while in any public place or on any public street in an incorporated city or in any public place or on any public street in a prohibited area of unincorporated territory is guilty of a misdemeanor."

The relevant exceptions to the foregoing prohibitions are set forth in sections 12027 and 12031. Section 12027, subdivision (a)(1)(A) provides that section 12025 does not apply to or affect:

"Any peace officer, listed in Section 830.1 or 830.2, whether active or honorably retired, other duly appointed peace officers, honorably retired peace officers listed in subdivision (c) of Section 830.5, *full-time paid peace officers of other states and the federal government who are carrying out official duties while in California*, or any person summoned by any of these officers to assist in making arrests or preserving the peace while he or she is actually engaged in assisting that officer." (Italics added.)

Similarly, section 12031, subdivision (b)(1) provides an exemption with respect to the carrying of loaded firearms for the same individuals as those specified in section 12027, subdivision (a)(1)(A).

Thus, if the federal correctional officers in question qualify as (1) full-time (2) paid (3) peace officers (4) who are carrying out official duties (5) while in California, they are exempt from the concealed and loaded firearms prohibitions of sections 12025 and 12031.[2]

As to whether federal correctional officers employed by the Bureau of Prisons are "peace officers" for purposes of sections 12027 and 12031, we note that the term "peace officer" is a generic term embracing many specific classifications of public officers having law enforcement powers and responsibilities. (See 65 Ops.Cal.Atty.Gen. 527 (1982).) Regarding the performance of law enforcement duties, these particular federal officers qualify as "law enforcement officers" as defined under federal law, since each is "an employee occupying a rigorous position, whose primary duties are the investigation, apprehension, or detention of individuals suspected or convicted of offenses against the criminal laws of the United States." (5 C.F.R. § 842.802 (1993).)[3]

---

[2] We shall assume that these officers occupy full-time paid positions.

[3] A "rigorous position" is one "the duties of which are so rigorous that employment opportunities should, as soon as reasonably possible, be limited (through establishment of a maximum entry age and physical qualifications) to young and physically vigorous individuals whose primary duties are

An officer or employee of the Bureau of Prisons is authorized by federal law to "make arrests on or off of Bureau of Prisons premises without warrant for violations of the following provisions regardless of where the violation may occur: sections 111 (assaulting officers), 751 (escape), and 752 (assisting escape) of title 18, United States Code, and section 1826(c) (escape) of title 28, United States Code . . . if such officer or employee has reasonable grounds to believe that the arrested person is guilty of such offense, and if there is likelihood of such person's escaping before an arrest warrant can be obtained." (18 U.S.C. § 3050.) Moreover, "[o]fficers and employees of the said Bureau of Prisons may carry firearms under such rules and regulations as the [United States] Attorney General may prescribe." (*Ibid.*)[4]

In addition to being federal "law enforcement officers" with the authority to arrest for federal offenses, correctional officers employed by the Bureau of Prisons serve in substantially the same capacity as state correctional officers -- an occupational group designated by section 830.5 as having "peace officer" status. Given each of these circumstances, we believe that the federal correctional officers in question are employed as "peace officers" as that term is used in sections 12027 and 12031.

With respect to the last two qualifications of "carrying out official duties while in California," without doubt these two qualifications are met by the federal officers in question. However, an additional issue to be resolved is whether these officers are entitled to an exemption from the section 12025 and 12031 prohibitions at all times while in California or only during the period when they are actually engaged in the performance of their federal duties. This issue was previously addressed in 63 Ops.Cal.Atty.Gen. 550 (1980), concerning federal rangers employed by the Bureau of Land Management to patrol the California Desert Conservation Area. We analyzed the question as follows:

"The fundamental rule of statutory construction requires ascertainment of the Legislature's intent in order to effectuate the purpose of the law. In determining that intent the words used in the statute should be interpreted to give effect to the statute according to the usual, ordinary import of the language used. [Citation.] What is the usual, ordinary import of the words `carrying out official duties while in California'? Nothing in these words implies or suggests any geographical limitation on the application of the exemption to any area less than all of California. The word `while' limits the exemption as to time to the period the officer is `in California.' Significantly the word `while' does not qualify the words `carrying out official duties' because it follows rather than precedes those words. Thus, the usual and ordinary import of the words used in the statute would make the exemption applicable to full-time federal peace officers who are assigned duties to be performed in California, anywhere in California, and for the period of time they are in California for the purpose of performing those duties.

. . . [i]nvestigating, apprehending or detaining individuals suspected or convicted of offenses against the criminal laws of the United States . . . ." (5 C.F.R. § 842.802 (1993).) We have determined from the position description for the correctional officers in question that the position is subject to a maximum appointment age of 34 and that the duties of the position are primarily concerned with the detention of individuals suspected or convicted of federal offenses.

[4] In light of the conclusion reached herein, it is unnecessary to determine whether, due to the supremacy clause of the United States Constitution, federal law preempts the application of the section 12025 and 12031 prohibitions to Bureau of Prisons personnel. (See 75 Cal.Ops.Atty.Gen. 270 (1992).)

".  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"We have found nothing in the history of the statute or in the context to indicate that the Legislature did not intend the words `carrying out official duties while in California' to have their ordinary and usual import.  Nor do we see any absurdity in such an interpretation.  Had the Legislature meant to restrict the application of this exemption either in time or territorially it knew how to do so as evidenced by the language it used in other exemptions contained in the same section when the exemption for officers of other states and the federal government was added to Penal Code section 12027 in 1959." (*Id.*, at pp. 552-553.)[5]

Based upon our 1980 analysis, we believe that the federal correctional officers under consideration herein are entitled to the exemptions of sections 12027 and 12031 at all times while in California.

In *California Assn. of Psychology Providers* v. *Rank* (1990) 51 Cal.3d 1, 17, the Supreme Court described the significance of Attorney General opinions that have not generated a "corrective measure" by the Legislature:

"`Opinions of the Attorney General, while not binding, are entitled to great weight.  [Citations.]  In the absence of controlling authority, these opinions are persuasive "since the Legislature is presumed to be cognizant of that construction of the statute."' (*Napa Valley Educators' Assn.* v. *Napa Valley Unified School Dist.* (1987) 194 Cal.App.3d 243, 251.)  In *Meyer* v. *Board of Trustees* (1961) 195 Cal.App.2d 420, the court found the Attorney General's construction of the teacher tenure requirements was decisive of the case, noting that `[a]s a contemporaneous construction, and because he was charged with the duty of rendering an opinion with respect to its meaning, the interpretation of the subject statute by the attorney general in 1936 is entitled to great respect.  [Citations.]  [¶]  It must be presumed that the aforesaid interpretation has come to the attention of the Legislature, and if it were contrary to the legislative intent that some corrective measure would have been adopted . . . .' (Pp. 431-432.)  Again in *Ventura* v. *City of San Jose* (1984) 151 Cal.App.3d 1076, 1080, the court relied heavily on an Attorney General opinion concerning the preemptive effect of state fireworks regulation, stating that `We can presume that this five-year-old opinion has come to the attention of the Legislature, and that if it were a misstatement of the legislative intent, "some corrective measure would have been adopted."'"

As the situation presented herein differs in no significant respect from that involving the federal rangers employed by the Bureau of Land Management to patrol the California Desert Conservation Area, and as the controlling provisions of the Dangerous Weapons Control Law have

---

[5]  We also considered in our 1980 opinion whether the exemption was limited to temporary assignments of federal personnel:

"Wording of the exemption for officers of other states and the federal government appears particularly appropriate to those officers who are in California on temporary assignments. However, there is nothing in the language of the exemption to make its application depend upon the duration of the California duty assignment.  The words `carrying out official duties while in California' are as applicable to officers assigned to duties in California on a permanent or indefinite basis as they are to temporary assignments." (*Id*., at pp. 553-554, fn. omitted.)

not changed in pertinent part since our 1980 opinion, we conclude that federal correctional officers employed by the Bureau of Prisons and assigned to duties in California are exempt from those provisions of the Dangerous Weapons Control Law which prohibit the carrying of concealed or loaded firearms.

* * * * *